## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RYAN HEARD,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 08-5494** |
| | : | |
| **ST. LUKE'S HOSPITAL,** | : | |
| **Defendant** | : | |

### M E M O R A N D U M

**STENGEL, J.**                                                                 **September 28, 2009**

This is an employment discrimination action removed from the Court of Common

Pleas of Lehigh County, alleging violations of the Americans with Disabilities Act,[1] the

Pennsylvania Human Relations Act,[2] and the Family Medical Leave Act.[3]  The defendant

---

[1]  The ADA provides:  No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.  42 U.S.C. § 12112(a).

[2]  The PHRA provides:  It shall be an unlawful discriminatory practice, . . . (a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.  43 Pa. Cons. Stat. Ann. § 955(a).

[3]  Three provisions collectively form the basis of liability under the FMLA.  Two subsections of 29 U.S.C. § 2615(a) provide: (1) It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter; and (2) It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter. In addition, 29 C.F.R. § 825.220(c) prohibits employers from discriminating against employees or prospective employees who have used FMLA leave.

has filed a motion to dismiss the amended complaint.  For the following reasons, I will grant the motion in its entirety.

## I. BACKGROUND[4]

Ryan Heard worked as a security guard on the night shift at Saint Luke's Hospital for nearly seven years and enjoyed an exemplary performance record.  See Am. Compl. ¶¶ 5, 7, 11.  The amended complaint alleges that Mr. Heard had requested a change in shift due to the stress he was suffering on that shift.  Id. ¶ 11.  He alleges that because the request was denied, his condition exacerbated.  Id. ¶ 12.

On January 13, 2007, Mr. Heard was in a car accident on his way to work shortly before 11:00 p.m., and was subsequently arrested for driving under the influence. Though not specifically described in the amended complaint, the motion to dismiss informs that the accident occurred near the defendant hospital just minutes before Mr. Heard's shift was scheduled to begin.  See Def. Exh. D.  The motion also indicates that Mr. Heard's alcohol level was nearly twice the legal limit at the time of his arrest.  Id. Mr. Heard signed a corrective action notice at work which indicated that he had been found to be impaired while on his way to work his scheduled shift.  See Def. Exh. B.

On January 14, 2007, the day after the accident, Mr. Heard was diagnosed with

---

[4]  The facts are gleaned from the amended complaint and the extrinsic documents upon which it is based.  See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004).  For the purposes of this motion, they are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in his favor.

major depression, and was approved for medical leave for approximately one month to seek treatment.  Id. ¶ 13.  The following day, he informed his manager that he would not return to work until cleared by his physician.  Id. ¶ 14.

On February 8, 2007, Mr. Heard met with the defendant's managers who told him his employment was terminated because of an "incident that occurred on January 13, 2007 and his exhibiting 'poor judgment.'"  Id. ¶¶ 15, 20.  Mr. Heard insists that the incident occurred on his own time and had nothing to do with his job at the hospital.  Id. ¶ 21.  It was then that Mr. Heard first told the managers of his diagnosis of major depression, and asked to participate in the Employee Assistance Program.  Id. ¶¶ 17, 22. The managers refused that request claiming that Mr. Heard did not meet the criteria for that discretionary program.  Id. ¶ 24.  The amended complaint alleges that the defendant found out about Mr. Heard's condition before his termination, and "attempted to use the plaintiff's DUI arrest as a pretext to hide its real motivation which was to discharge the plaintiff due to his major depression."  Id. ¶ 18.  In fact, Mr. Heard alleges that the hospital was aware of his "medical leave" as early as January 15, 2007, and that it sent Mr. Heard dated FMLA paperwork on January 26, 2007.  Id. ¶ 26.  The amended complaint further alleges that when Mr. Heard sought an accommodation due to stress caused by working the night shift, the defendant began to perceive him as being disabled. Id. ¶ 19.

Mr. Heard was informed in writing that he was being terminated because "your

poor judgment on January 13, 2007 (intending to report to work as a security officer while intoxicated) posed serious safety risks, not only to yourself, but to our patients, visitors and staff."  Id. ¶ 32; see also Def. Exh. C.  A couple of days after an appeal meeting with the Human Resources representative, Mr. Heard was notified that the hospital decided to stand by its original decision to discharge his employment.  Id. ¶ 31. At that appeal meeting, Mr. Heard requested admittance into the Employee Assistance Program for the second time, and was again refused.  See Am. Compl. ¶¶ 22, 24, 27.  Mr. Heard alleges that the hospital refused his admittance because it perceived him as being disabled.  Id. ¶ 25.

## II.  STANDARD FOR A MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all

of the facts upon which he bases his claim.  <u>Conley</u>, 355 U.S. at 47.  Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  <u>Id.</u>  The "complaint must allege facts suggestive of [the proscribed] conduct."  <u>Twombly</u>, 550 U.S. at 564.  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  <u>See Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997); <u>Sterling v. Southeastern Pennsylvania Transp. Auth.</u>, 897 F. Supp. 893 (E.D. Pa. 1995).  The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements.  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at 556).

## III.    DISCUSSION

In Counts I and II of the amended complaint, Mr. Heard alleges that he had a disability within the meaning of the ADA and the PHRA, respectively; that he could perform the essential functions of his job with a reasonable accommodation; and that the defendant refused to grant the reasonable accommodation even though it would not have constituted any significant hardship to the defendant.  <u>See</u> Am. Compl. §§ 44, 45, 49, 50. In Count III, Mr. Heard alleges that his termination was motivated by a retaliatory animus because he had been out on FMLA leave immediately prior to his termination; that his termination represented an unlawful attempt to interfere with his rights under the FMLA

and to retaliate against him for taking an FMLA leave; and that the defendant's use of the DUI conviction was a pretext for termination to cover up its real motivation which was to retaliate against him for taking FMLA leave.  See Am. Compl. ¶¶ 59, 60, 61.

### A.  ADA and PHRA

The defendant first argues that dismissal of the first two counts of the amended complaint is proper because Mr. Heard has failed to (1) allege a disability under the ADA and the PHRA; and (2) state a claim for failure to accommodate under those statutes.[5]  I agree.

The Third Circuit Court of Appeals has indicated that the McDonnell Douglas burden-shifting framework applies to ADA claims.  See Shaner v. Synthes (USA), 204 F.3d 494, 500-501 (3d Cir. 2000); see also Walton v. Mental Health Ass'n of Southeastern Pa., 168 F.3d 661, 667-668 (3d Cir. 1999).  Under the ADA, a qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds . . . ."  42 U.S.C. § 12111(8).  Accordingly, in order to establish a *prima facie* case of disability employment discrimination, Mr. Heard must demonstrate the

---

[5]  While Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA, its courts nevertheless generally interpret the PHRA in accord with its federal counterparts.  Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir. 1995).  Accordingly, I shall specifically address only the ADA claim which analysis applies equally to the PHRA claim.  Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996).

existence of the following elements: (a) he is a disabled person[6] within the meaning of the

ADA; (b) he is otherwise qualified[7] to perform the essential functions of the job, with or

without reasonable accommodations by the employer; and (c) he has suffered an

otherwise adverse employment decision as a result of discrimination.  See Shaner, 204

F.3d at 500; see also Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998);

Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998).

Other than indicating that he was diagnosed with major depression on the day

following his car accident and arrest for DUI, Mr. Heard does not attempt to satisfy the

definition of a disability.  See 42 U.S.C. § 12102(2).  The complaint does not describe the

effect his impairment had on any major life activity[8] as required under the ADA.  In

paragraph 47 of the amended complaint, Mr. Heard alleges that he "suffered from a

---

[6]  The ADA defines a disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.  See 42 U.S.C. § 12102(2).  Federal Regulations define a "physical or mental impairment" as either: 1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.  29 C.F.R. § 1630.2(h).

[7]  Under the ADA, a qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds . . . ."  See 42 U.S.C. § 12111(8).

[8]  Major life activities are those activities that are of central importance to daily life.  Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184 (2002).  The EEOC has defined major life activities to include functions such as caring for oneself, performing menial tasks, walking, seeing, hearing, speaking, breathing, learning, and working.  29 C.F.R. § 1630.2(i).

medical condition that substantially limited one or more of his major life activities." This allegation, though filled with ADA-related language, is insufficient under our pleading standard. Without even a short and plain statement of the impact the impairment has on at least one major life activity, paragraph 47 is merely a bald assertion or a vague and conclusory allegation, and lacks the necessary factual matters to establish that Mr. Heard is disabled within the meaning of the ADA. Accordingly, the first element of the *prima facie* case for disability discrimination has not been satisfied.

I am also not persuaded by the assertion that the defendant somehow "perceived" Mr. Heard as being disabled. See 42 U.S.C. § 12102(2)(C). Mr. Heard notes that he began to experience problems including constant harassment when he started to work for a new supervisor. Am. Compl. ¶ 9. Thereafter, he allegedly asked the defendant "for a change in his shift due to stress that he was suffering as a result of his third shift position at the time." Id. ¶ 11. That request was denied. This paragraph likewise lacks an allegation about which of Mr. Heard's major life activities the defendant regarded as being substantially limited. An employee's allegation of stress, without a significant limitation of a major life activity, is insufficient to satisfy the definition of a disability under the ADA. See Gaul v. Lucent Techs., 134 F.3d 576, 580 n.3 (3d Cir. 1998) (citing Weiler v. Household Finance Corp., 101 F.3d 519, 524 (7th Cir. 1996)) (the major life activity of working is not substantially limited if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress). Because Mr. Heard does not establish a

*prima facie* case of disability discrimination, I will dismiss Counts I and II of the amended complaint.

Even assuming that Mr. Heard could successfully satisfy the elements of a *prima facie* case, these counts would still fail.  Mr. Heard alleges that "the defendant refused to grant the plaintiff a reasonable accommodation within the meaning set forth in the Americans With Disabilities Act regulations, 29 C.F.R. Section 1630.2(o), i.e., by the defendant's refusal to provide the plaintiff with the appropriate accommodations set forth hereinabove."  Am. Compl. ¶ 50.  Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities.  Taylor v. Phoenixville School District, 184 F.3d 296, 306 (3d Cir. 1999).  The ADA specifies that an employer discriminates against a qualified individual with a disability when the employer does "not make reasonable accommodations to the known physical or mental limitations of the individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]."  42 U.S.C. § 12112(b)(5)(A).  The ADA's regulations state:

> To determine the appropriate reasonable accommodation it
> may be necessary for the employer to initiate an informal,
> interactive process with the employee in need of
> accommodation.  This process should identify the precise
> limitations resulting from the disability and the potential
> reasonable accommodations that could overcome those
> limitations.

29 C.F.R. § 1630.2(o)(3).  Similarly, the EEOC's interpretive guidelines provide that:

> Once a qualified individual with a disability has requested
> provision of a reasonable accommodation, the employer must
> make a reasonable effort to determine the appropriate
> accommodation.  The appropriate reasonable accommodation
> is best determined through a flexible, interactive process that
> involves both the employer and the employee with a
> disability.

29 C.F.R. Pt. 1630, App. § 1630.9 at 359; see also Mengine v. Runyon, 114 F.3d 415,

419-420 (3d Cir. 1997) (both parties have a duty to assist in the search for appropriate

reasonable accommodation and to act in good faith).  The Third Circuit Court of Appeals

agreed with the approach taken by the Seventh Circuit Court of Appeals which held that:

> An employee's request for reasonable accommodation
> requires a great deal of communication between the employee
> and employer.  Both parties bear responsibility for
> determining what accommodation is necessary.  Neither party
> should be able to cause a breakdown in the process for the
> purpose of either avoiding or inflicting liability.  Rather,
> courts should look for signs of failure to participate in good
> faith or failure by one of the parties to help the other party
> determine what specific accommodations are necessary.  A
> party that obstructs or delays the interactive process is not
> acting in good faith.  A party that fails to communicate, by
> way of initiation or response, may also be acting in bad faith.
> In essence, courts should attempt to isolate the cause of the
> breakdown and then assign responsibility.

Taylor v. Phoenixville Sch. Dist., 184 F.3d at 312 (quoting Bultemeyer v. Fort Wayne

Community Schools, 100 F.3d 1281 (7th Cir. 1996)); see also Conneen v. MBNA

America Bank, N.A., 334 F.3d 318, 329-30 (3d Cir. 2003) (citing 29 C.F.R. § 1630.2 and

29 C.F.R. § 1630, app. 1630.9)(although not in the text of the ADA itself, applicable

regulations call for an interactive process between the employer and employee to determine appropriate reasonable accommodation).  Participation in the interactive process is the obligation of both parties, so an employer cannot be faulted if after conferring with the employee to find possible accommodations, the employee then fails to supply information that the employer needs or does not answer the employers request for more detailed proposals.  Id. at 317.

To establish that an employer failed to participate in the interactive process of accommodation, an employee must show that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been accommodated but for the employer's lack of good faith.  Taylor, 184 F.3d at 319-320; see also Conneen, 334 F.3d at 330 (the interactive process must include sufficient notice to inform the employer that an employee is requesting an accommodation followed by good faith participation of the employer and employee in that interactive process).

Here, Mr. Heard never made his employer aware of any substantially limiting impairment or disability within the meaning of the ADA prior to engaging in the misconduct which resulted in his termination.  Liability cannot be established where an employee engages in misconduct, learns of his resultant termination, then informs his employer of an impairment and requests an accommodation.  The EEOC's position is

11

clear: "since reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability." See EEOC's Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the ADA, 35-36 (2002).  Mr. Heard admits that the decision to discharge him was made while he was still on medical leave and prior to his disclosure of his purported disability to his employer and request for accommodation.  Am. Compl. ¶¶ 15, 17, 22.

Many courts throughout the country have held that an employer is not obligated to accommodate an employee whom it has decided to discharge for misconduct, even if the employee subsequently cites some medical condition or disability as the supposed cause of the prior misconduct triggering the discharge.  See Davila v. Quest Corp., 114 Fed. Appx. 849 (10th Cir. 2004); Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1187 (9th Cir. 2001); Pernice v. City of Chicago, 237 F.3d 783, 785 (7th Cir. 2001); Hill v. Kansas City Area Transp. Auth., 181 F.3d 891, 894 (8th Cir. 1999); Jones v. American Postal Workers Union, 192 F.3d 417, 429 (4th Cir. 1999); Hamilton v. Southwestern Bell Telephone Company, 136 F.3d 1047, 1052 (5th Cir. 1998).

Notwithstanding the allegations in his complaint, it is clear that Mr. Heard's disability was not the reason that his employment was terminated.  The defendant had a legitimate non-discriminatory business reason for Mr. Heard's termination.  Within a few minutes of the start of his scheduled shift, Mr. Heard was in a car accident, and was arrested for driving under the influence.  His alcohol level was nearly twice the legal

limit.  Mr. Heard signed a corrective action notice at work which explained that he was being suspended pending investigation because he had been found to be impaired while on his way in to work his scheduled shift.  The defendant then informed Mr. Heard in writing that he was being terminated because "your poor judgment on January 13, 2007 (intending to report to work as a security officer while intoxicated) posed serious safety risks, not only to yourself, but to our patients, visitors and staff."  The ADA does not require the employer to provide retroactive accommodation in the form of being absolved of such misconduct.  Thus, Mr. Heard has failed to state a claim for unlawful denial of accommodation as a matter of law.

### B.  **FMLA**

The defendant next argues that Count III should also be dismissed because Mr. Heard failed to state an FMLA retaliation claim.  Although a careful reading of Count III reveals that Mr. Heard attempted to include both an FMLA retaliation claim and an FMLA interference claim, I find that neither claim should proceed.

Congress enacted the FMLA in 1993 to accommodate the important societal interest in assisting families by establishing a minimum labor standard for leave.  Congress' stated purposes for the Act are (1) to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity; and (2) to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the

care of a child, spouse, or parent who has a serious health condition.  Sommer v.

Vanguard Group, 461 F.3d 397, 398-99 (3d Cir. 2006).  The FMLA endeavors to

accomplish these purposes "in a manner that accommodates the legitimate interests of

employers."  29 U.S.C. § 2601(b)(3).

        Mr. Heard alleges that the conduct of the defendant "was motivated by a

retaliatory animus, due to the fact that the plaintiff had been out on FMLA leave

immediately prior to his termination."  Am. Compl. ¶ 59.  His termination, he alleges,

represents an unlawful attempt to interfere with the plaintiff's rights under the FMLA and

to retaliate against the plaintiff for taking an FMLA leave."  Id. ¶ 60.

        The FMLA contains two relatively distinct types of provisions.  First, it creates a

series of prescriptive substantive rights for eligible employees, often referred to as the

"entitlement" or "interference" provisions which set floors for employer conduct.  See

Churchill v. Star Enters., 183 F.3d 184, 192 (3d Cir. 1999).  Eligible employees "shall be

entitled to a total of twelve workweeks of leave during any twelve-month period" if the

employee has a "serious health condition that makes the employee unable to perform the

functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).

        Additionally, the FMLA provides protection against discrimination based on the

exercise of these rights, often referred to as the "discrimination" or "retaliation"

provisions.  29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating

against employees . . . who have used FMLA leave").  Employers may not "use the taking

14

of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."  29 C.F.R. § 825.220(c); see also Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 147 n.9 (3d Cir. 2004).

In order to assert an interference claim, the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them.  29 U.S.C. §§ 2612(a), 2614(a).  The Act provides that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).  Under this theory, the employee need not show that he was treated differently than others.  Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005).  Further, the employer cannot justify its actions by establishing a legitimate business purpose for its decision.  Id. at 119-120.  An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.  Id.

It is undisputed that Mr. Heard was entitled to the benefits of the FMLA.  It is also undisputed that Mr. Heard asked for FMLA leave on the day following his accident: "Subsequently after being diagnosed on January 14, 2007, Complainant took approved medical leave for approximately one month in order to seek treatment for his disability."  Am. Compl. ¶ 13.  The amended complaint also indicates, "Plaintiff believes, and therefore avers, that on January 15, 2007 he informed his manager that he would not be returning to work until he was cleared by his doctor."  Id. ¶ 14.  When he returned from

his FMLA leave in February, he was informed about his termination.  Id. ¶ 15.  While Mr.

Heard establishes that he was entitled to benefits under the FMLA, he cannot show that

he was denied them, or that the defendant attempted to interfere with those rights.

Accordingly, I will dismiss the FMLA interference claim in Count III of the amended

complaint.

To be successful on his FMLA retaliation claim, Mr. Heard must show that (1) he

took an FMLA leave;[9] (2) he suffered an adverse employment decision; and (3) the

adverse decision was causally related to his leave.  Id.  There is no dispute that Mr. Heard

took an FMLA leave and that the defendant discharged him during that leave.  What the

complaint lacks, however, is a factual averment attempting to establish the requisite

retaliatory animus on the defendant's part.  Furthermore, Mr. Heard cannot establish that

the termination was causally related to his leave.  In fact, he had already engaged in the

misconduct which resulted in his termination before he went out on FMLA leave.  The

DUI arrest within minutes of his scheduled shift, which the defendant characterized as

"poor judgment" provided the defendant with a clearly legitimate non-pretextual reason

for Mr. Heard's termination.  As the termination notice indicated, the misconduct "posed

serious safety risks, not only to [Mr. Heard], but to [the hospital's] patients, visitors and

---

[9]  The Third Circuit has recently interpreted the requirement that an employee "take" FMLA leave to connote invocation of FMLA rights, not actual commencement of leave.  Erdman v. Nationwide Insurance Company, 2009 U.S. App. LEXIS 20979, *23 (3d Cir. September 23, 2009).  In so doing, the court allowed for the firing of an employee for a valid request for FMLA leave to constitute interference with the employee's FMLA rights as well as retaliation against the employee.  Id.

staff."  Accordingly, because Mr. Heard fails to establish either an FMLA interference claim or an FMLA retaliation claim, I will dismiss Count III of the amended complaint in its entirety.

An appropriate Order follows.

18